ATTACHMENT

RECEIVED
FEB 0 9 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# Ratliff's Law Review

Robert A. Ratliff, Esq *713 Dauphin Street* Mobile, AL  36602



Number 10  |  January 17, 2007  |  Volume 3

## Advisory Guidelines Apply for Any Re-sentencing

There are a number of ways to achieve a re-sentencing. In our last newsletter, we highlighted Carrington V. United States, case No. 05-36143, 9th Cir (December 13, 2006), where the Ninth Circuit Court of Appeals recalled mandates in two cases in order to allow for a Booker re-sentencing simply because the judge at sentencing stated on the record that he/she did not want to impose the sentence mandated by the guidelines. (One of the cases in Carrington had been final for over 16 years!).

This month, in another Ninth Circuit case, the Court has held that under Booker, defendants being resentenced under any procedural basis are entitled to be resentenced under an advisory guideline scheme. In United States v. Hicks, (Case No. 06-30193) 2007 U.S. App. Lexis 540, the Ninth Circuit held:

*"As a general matter, courts may not alter a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c); United States v. Hovsepian, 307 F.3d 922, 927 (9th Cir.2002) ("District courts do not have inherent authority to resentence defendants at any time.") (quoting United States v. Stump, 914 F.2d 170, 172 (9th Cir. 1990)). However, § 3582(c)(2) creates an exception in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(2)."*

*Alabama Bar Association rules require the following disclaimer:* "No representation is made that the quality of legal services to be provided is greater than the quality of legal services to be performed by other attorneys." This newsletter is not a "mass communication" vehicle as defined by certain other bar rules. It is designed to respond to requests made by individuals interested in the practice of Robert A. Ratliff, Esq. This publication is not designed to be a substitute for legal or other professional advice. If you have a specific legal issue, all readers are urged to contact a legal professional directly.

Under this section, a district court can re-sentence a defendant, like Hicks, whose sentencing range has been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o). This allows the district court to re-calculate the defendant's sentencing range using the newly reduced Guideline, and then determine an appropriate sentence in accordance with the § 3553(a) factors. See id. The open question is whether the district court's new Guideline calculation imposes a mandatory sentencing range or an advisory one. We believe the clear language of Booker makes the range advisory.

Booker explicitly stated that, *"as by now should be clear, [a] mandatory system is no longer an open choice."* Booker, 543 U.S. at 263; see also id. at 264 (noting that district courts are *"not bound to apply the Guidelines"*). Although the Court acknowledged that Congress had intended to create a mandatory Guidelines system, Booker stressed that this was not an option: *"[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open. . . . [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law."* Id. at 265. The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context."

Thus, because Hicks was fortunate enough to have a retroactive guideline amendment apply to him, he was entitled to be resentenced under an advisory guideline scheme. Carrington, in the case cited last month, was fortunate enough to have a sentencing transcript where the judge articulated his dissatisfaction with the guideline mandated sentence, so he was also entitled to be resentenced, after 16 years, under the advisory guideline scheme. So how does this effect the need for uniform sentencing articulated by the Supreme Court opinion in Booker and §3553 sentencing factors? These types of results create significant sentencing disparity for individuals who were not fortunate enough to have mistakes in their original sentencing, or retroactive guideline amendments.

## THE BENEFIT OF A PAID ATTORNEY

The New York Times recently published an editorial by Judge Morris Hoffman of Colorado, entitled "Free-Market Justice: Why do private lawyers do better than public defenders?" This editorial referenced a law review article published in the Ohio State Journal of Criminal Law, published November 1, 2006, titled "An Empirical Study of Public Defender Effectiveness: Self-Selection by the 'Marginally Indigent".

Judge Hoffman stated that after reviewing 5,224 felony criminal cases filed in Denver in 2002 and comparing the jail time in each of those cases, the average sentence for clients of public defenders was almost three years longer than the average for clients of private lawyers and when the seriousness of the crime was considered, public defenders performed relatively worse, not better averaging five years more incarceration than paid counsel on the more serious offenses

Judge Hoffman reviewed both economic and other factors in this study. One conclusion was that people who knew they were guilty tended to accept their guilt and went with a public defender to save money. If that was the case then, my assessment of Judge Hoffman's conclusion is that proceeding with a public defender is an admission of guilt to the judge and the jury AND rather than the admission of guilt resulting in a lesser sentence, it actually results in a higher sentence! I think the actual reasoning behind this is simply a function of time spent on the case. My guess would be that the disparity between paid counsel and public defender would widen as the amount paid for the attorney increased. In fact, I would bet that if you could empirically study the amount of time spent by the attorney on the case versus the length of sentence, you would find a more significant correlation. Proving that you get what you pay for.