Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JUAN FRANCISCO RINCON VALERA (D-4),<br><br>        Defendant. | NO. 3:99-cr-00036-04-HRH<br><br>**MOTION TO REDUCE SENTENCE** |

**I.   NATURE OF MOTION**

Defendant Juan Valera, by and through his counsel, Rich Curtner, Federal Defender, moves this court for resentencing pursuant to 18 U.S.C. § 3582(c)(2). This statute provides jurisdiction to a district court to reduce the sentence of a defendant "who has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id*.

## II.   JURISDICTION

This court has jurisdiction under § 3582(c)(2)[1] and the discretion to ameliorate the long sentence imposed in this case. Because the Sentencing Commission has approved retroactive application of an amendment to the crack cocaine guideline,[2] and because the court's sentencing decision in this case was based upon the "old" guideline

---

[1] Section 18 U.S.C. § 3582(c)(2) provides:
In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

[2] On November 1, 2007, the United States Sentencing Commission issued amendments to the crack guidelines which lowered the penalties for most crack cocaine offenses. This action was taken in response to studies which raised grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated in the sentencing guidelines. *See generally* UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2007); UNITED STATES SENTENCING COMMISSION, REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002); UNITED STATES SENTENCING COMMISSION, SPECIAL REPORT TO CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (February 1995). *See also Kimbrough v. United States*, 128 S. Ct. 558, 568-69 (2007) (discussing history of crack cocaine guidelines and various Sentencing Commission reports). On December 11, 2007, the Commission voted to apply the crack amendments retroactively to cases sentenced before November 1, 2007. *See* 73 Fed. Reg. 217-01 (2008). In conjunction with voting to apply the crack amendments retroactively in November 2007, the Commission also significantly modified U.S.S.G. § 1B1.10, the guideline concerning retroactive application of amendments. In April 2008, the Commission further amended the sentencing guidelines to change the drug equivalency calculation between crack cocaine and marijuana in poly-drug cases. This newest change became effective May 1, 2008, and is retroactive.

Through these amendments, the Commission has sought a correction of the base offense level for the prior disproportionate treatment of crack cocaine relative to powder cocaine. In most cases, the anticipated result for the eligible defendant will be a two-level decrease in the base offense level for controlled substances offenses.

for the scoring of crack cocaine offenses, at a minimum, Mr. Valera is eligible for resentencing under 18 U.S.C. § 3582(c)(2).

### III.     MR. VALERA'S STATUS

Juan Valera was convicted of drug trafficking crimes in 1999. His sentence was imposed on April 6, 2000, under the sentencing guidelines, with the base offense level computed under U.S.S.G. § 2D1.1. The court sentenced Mr. Valera to a sentence of 324 months' imprisonment, the low end of the pertinent sentencing range of 324 to 405 months.

According to the Bureau of Prisons' website, Mr. Valera's anticipated release date is December 8, 2023. Mr. Valera has been in custody in this case since March 17, 1999. During his incarceration, Mr. Valera has done exceptionally well. As testament, he has received a number of certificates for his completion of work and education programs. They are attached as Exhibit A.

### IV.     TRIAL AND SENTENCE

Juan Valera was charged with 13 other codefendants with Conspiracy to Distribute a Controlled Substance (Count 1 of the Indictment). Mr. Valera was also charged with Distribution of Crack Cocaine in two other counts of the Indictment: Count 15 charged the distribution of 25.2 grams of cocaine base on October 16, 1998; Count 17 charged the distribution of 26.8 grams of cocaine base on October 30, 1998.

Mr. Valera was convicted of all three counts after a jury trial.

In calculating Mr. Valera's sentence under the then-mandatory sentencing guidelines, the presentence report writer utilized amounts of powder cocaine and cocaine base, alleged to have been distributed on dates outside of the counts of conviction, for a combined drug equivalency of 67 kilograms of cocaine powder. Much of this calculation was based on the 100-to-1 ratio of crack to powder under the sentencing guidelines then in effect.

The base offense level was calculated at a level 36. The total offense level was enhanced three levels for Mr. Valera's role in the offense. Mr. Valera's criminal history was Category III.

The Honorable James F. Fitzgerald sentenced Mr. Valera to the bottom of the sentencing range of 324 to 405 months. Judge Fitzgerald made the following comment in imposing the sentence:

> I think at your age the 324 months is indeed a very heavy sentence, but it's the minimum that I can impose under the Sentencing Guidelines.

(Sentencing Transcript at p. 4, attached as Exhibit B.)

## V.    RELIEF SOUGHT

Mr. Valera seeks a resentencing. He is entitled to a resentencing because of Amendment 706 of the sentencing guidelines, which altered the drug quantity table in U.S.S.G. § 2D1.1(c). Pursuant to that amendment, he should receive a two-level reduction of the offense level, as authorized by the Sentencing Commission. The *base* offense level under § 2D1.1 was 36; it should be corrected to "34." Mr. Valera's <u>total</u> offense level

should, at a minimum, be lowered from 39 to 37. The range of imprisonment for an offense level of 37 and a Criminal History Category III is 262 to 327 months. However, the court is no longer limited to consideration of the guideline range for the sentence to be imposed.

At the time of Mr. Valera's original sentence, this court was required to treat the guidelines as mandatory under the controlling law at the time. Since then, the Supreme Court has held that the guidelines in their mandatory form are unconstitutional and – by severing 18 U.S.C. § 3553(b) – made them "effectively advisory." *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and subsequent Supreme Court cases clarifying it – namely *Rita v. United States*, 551 U.S. ___, ___-___, 127 S. Ct. 2456, 2464 (2007) (stating that courts "may depart (either pursuant to the guidelines or, since *Booker*, by imposing a non-guidelines sentence)"); *Gall v. United States*, 552 U.S. ___, ___, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) (a sentence outside the guidelines carries no presumption of unreasonableness); and *Kimbrough v. United States*, 552 U.S. ___, ___, 128 S. Ct. 558, 578, 169 L. Ed. 2d 481 (2007) (district courts' freedom to deviate from 100-to-1 ratio did not violate sentencing statute's "unwarranted sentence disparities" provision; and district court may conclude that guidelines' crack cocaine/powder cocaine disparity yields sentence "greater than necessary") – have created a different sentencing scheme in which the guidelines are but one of the several factors to be considered under 18 U.S.C. § 3553(a). The "overarching provision" in *Booker* sentencings is the requirement that courts "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Kimbrough*, 128 S.Ct. at 570.

On resentencing, Mr. Valera seeks a sentence reduction because the guideline sentence imposed was greater than necessary to achieve § 3553(a) purposes. Noting the excessive nature of the range of imprisonment at the time the court sentenced Mr. Valera under the then-mandatory guidelines, this district court stated:

> I think at your age the 324 months is indeed a very heavy sentence, but it's the minimum that I can impose under the Sentencing Guidelines.

(Sentencing Transcript at p. 4, attached as Exhibit B.)

## VI.  THE CRACK-COCAINE DISPARITY JUSTIFIES SENTENCING REDUCTION

There are a number of non-guidelines factors that justify a sentence below even the new guideline range.

The Supreme Court held that "under *Booker*, the cocaine guidelines, like all other guidelines, are advisory only, and that the district court [in *Kimbrough*] erred in holding the crack/powder disparity mandatory." *Id.* at 564. As a result, this court is free to "conclude . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a) purposes, even in a mine-run case." *Id.* at 563.

The Supreme Court's decision in *Kimbrough* was grounded in the research and recommendations of the United States Sentencing Commission itself, which has acknowledged that the crack/powder disparity in the guidelines is deeply flawed. *Id.* at 568 (*citing* Commission's conclusion in its 2002 report to Congress that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act

and the 1986 [Anti-Drug Abuse] Act").[3]  Indeed, based on its research, the Commission has recommended at different times that Congress reduce the disparity to 20 to 1, 5 to 1, and as low as 1 to 1.  *Id.* at 569 (*citing* Commission's 1995, 1997, and 2002 reports).  To illustrate the application of such vastly different sentencing ratios in Mr. Valera's case, the following shows the adjustment of his total offense level.

| 100:1 | 20:1 |
|---|---|
| (37) 262 - 327 | (35) 210 - 262 |

Most recently, when it submitted its proposed two-level reduction in the crack guideline, the Commission recommended that Congress further "substantially" reduce the ratio.  *Id.* at 569 (*citing* Commission's 2007 report).  The Commission recommended further reductions in the ratio because even the amended crack guideline still yields grossly disproportionate sentences.  In *Kimbrough*, the Supreme Court characterized the amendment as "modest," noting that it "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1" – well above the Commission's recommended ratios.  *Id.* at 573.  Thus, the court found, "[t]he amended guidelines still produce sentencing ranges keyed to the mandatory minimums in the 1986 Act," which it identified as the source of the unwarranted disparity between the crack and powder

---

[3] Among the flaws in the guideline are:  (1) "the assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution;" "the 'anomalous' result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced;" and "the severe sentences . . . imposed 'primarily upon black offenders.'" *Id.* at 568.

cocaine guidelines to begin with. *Id.* at 569 n.10. Indeed, even the Commission has admitted that the amendment is "'only . . . a partial remedy' for the problems generated by the crack/powder disparity." *Id.* at 569 (*citing* Commission's 2007 report).

Because the amended guideline still results in sentences that are based on an unwarranted disparity and fail to serve the purposes of sentencing, this court should impose a lower sentence in this case. *Id.* at 576 ("the District Court properly . . . accord[s] weight to the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)"). *Kimbrough's* rationale for varying from the crack guidelines therefore remains even after the new guideline is applied.

In addition to the problems with the crack/powder ratio generally, the disparity reflected in the guidelines range is "too vast . . . as applied to the particular defendant that appears before the court." *See United States v. Ricks*, 494 F.3d 395, 403 (3d Cir. 2007); *see also United States v. Gunter*, 462 F.3d 237, 249 (3d Cir. 2006) ("district courts may consider the crack/powder cocaine differential in the guidelines as a factor . . . in the *post-Booker* sentencing process"). *Kimbrough* made clear that this court may "properly home in on the particular circumstances of [the] case" in imposing a lower than guidelines sentence in a crack case.

In 1986, when Congress instituted the 100-to-1 ratio for statutory mandatory minimums, one of the primary reasons offered for the differential was an assumption that high levels of violence were associated with crack cocaine trafficking; likewise, it was widely assumed that many crack cocaine offenses involved distribution to minors or pregnant women. These assumptions, however, have proven unfounded. *See* U.S.

Sentencing Comm'n, REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002) at vi, vii, 91, 94-96. Moreover, they are not present in Mr. Valera's case.

Furthermore, as the Sentencing Commission has concluded, the "100-to-1 . . . ratio is a primary cause of the growing disparity between sentences for Black and White federal defendants." U.S. Sentencing Comm'n, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (Feb. 1995) at 163; *see also* U.S. Sentencing Comm'n, REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY (May 2002) ("2002 Report") at 102-03. Even though the drug guideline is not designed deliberately to sentence minorities more harshly, the fact remains that it does in practice when crack cocaine cases are at issue. That will occur here, in Mr. Valera's case. The practice of meting out punishment that is harsher to one group than another corrodes belief in equal justice under the law. *See Kimbrough*, 128 S.Ct. at 568; 2002 Report at 103. This court should therefore consider reducing Mr. Valera's sentence below the new guidelines range to reduce the disparity.

### VII. THE SIXTH AMENDMENT REQUIRES AN ACCURATE GUIDELINE CALCULATION UNDER *APPRENDI/BLAKELY*

It is Mr. Valera's position that at resentencing this court must address the sentencing factors of 18 U.S.C. § 3553(a), and that a sentencing analysis under § 3553(a) requires an accurate guideline calculation. For an accurate guideline calculation, Mr. Valera has the right to challenge the guidelines calculation of the original presentence report, and this court's findings as to the guidelines calculation must be supported by

evidence that establishes any enhancements beyond a reasonable doubt, or in the alternative, by a clear and convincing standard.

Once the sentencing guidelines for Mr. Valera have been accurately calculated under current constitutional standards, the court must consider the other factors of 18 U.S.C. § 3553(a) in imposing sentence.

A.  <u>The Constitutional Flaws of Mr. Valera's Original Guideline Calculation</u>.

Under the constitutional standards established by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum, must be submitted to a jury, and proved beyond a reasonable doubt.  Under *Blakely v. Washington*, 542 U.S. 296 (2004), facts supporting enhancement of a guideline range also must be proved beyond a reasonable doubt.

In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that the federal sentencing guidelines were advisory, avoiding the full impact of *Apprendi* and *Blakely* on federal sentencing.  However, Mr. Valera maintains that the Sixth Amendment jurisprudence of *Apprendi* and *Blakely* still affects the legal analysis of his sentencing.

The indictment in Mr. Valera's case charged Mr. Valera with a conspiracy to distribute five kilograms of cocaine (Count 1) and the distribution of 52 grams of crack (Counts 15 and 17). There are no other allegations of the specific amount of drugs for which Mr. Valera is criminally responsible, or Mr. Valera's role in the drug conspiracy. These facts were found by Judge Fitzgerald to support the enhancement that drastically increased his sentence.

Moreover, there are only general verdicts by the jury in Mr. Valera's case, and no special findings by the jury as to the amount of drugs or role in the offense. Mr. Valera continues to maintain that the Six Amendment requires that any fact which is necessary to support a sentence exceeding the maximum authorized by the facts established by a jury verdict must be proved to a jury beyond a reasonable doubt. *Booker*, 543 U.S. at 244.

In Mr. Valera's case, Judge Fitzgerald sentenced Mr. Valera on facts that greatly enhanced his guideline range without those facts being admitted by Mr. Valera or proved to a jury. Judge Fitzgerald found that these enhancements were established by a standard of proof of a preponderance of the evidence. Therefore, the guideline range established at Mr. Valera's original sentencing is constitutionally flawed, and cannot be part of this court's 18 U.S.C. § 3553(a) analysis. The proper guideline calculation for Mr. Valera's counts of conviction is a total offense level of 32, even with the 100-to-1 crack/cocaine equivalency, and a range of imprisonment of 151 to 188 months.

B.   Ninth Circuit Standards for Post-*Booker* Resentencing.

One of the latest pronouncements of the Ninth Circuit Court of Appeals concerning the proper procedure for sentencing after *Booker* is set forth in *United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007).

In *Zolp* the Court of Appeals stated:

Even though *United States v. Booker* rendered the guidelines advisory, as part of its sentencing analysis under 18 U.S.C. § 3553(a), "the district court must calculate the guidelines range accurately. A misinterpretation of the guidelines by a district court effectively means that the district court has not properly consulted the guidelines" for purposes of its § 3553(a) analysis.

479 F.3d at 721 (citations omitted).

The court in *Zolp* also addressed the standard for proving facts that support a sentence enhancement:

> Nevertheless, the government bears the burden of proof on the facts underlying a sentence enhancement. ("[W]hen the government seeks an upward adjustment, it bears the burden of proof.") (citation omitted). Further, "where an extremely disproportionate sentence results from the application of an enhancement, the government may have to satisfy a 'clear and convincing' standard."

479 F.3d at 718 (citations omitted).

The *Zolp* decision applies with full force to Mr. Valera's resentencing. Mr. Valera clearly was given an extremely disproportionate sentence because of enhancements based on relevant conduct and his role in the offense. Just as a clear and convincing standard of proof was applied to a calculation of the amount of "**loss**" which enhanced a sentence, at a minimum the same standard would apply to a calculation of the amount of "**drugs**" used to enhance Mr. Valera's sentence.

### VIII. MR. VALERA'S CHARACTERISTICS AND POST-OFFENSE CONDUCT ALSO WARRANT SENTENCE REDUCTION

Section 3553(a) identifies the "Factors To Be Considered in Imposing a Sentence." The section provides:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

>(2) the need for the sentence imposed –
>
>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a)(2)(A) requires judges to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

Mr. Valera has now been imprisoned for over nine years. While incarcerated, he has participated in a number of work and education programs within the Bureau of Prisons. When all of the factors of 18 U.S.C. § 3553(a) are considered, a sentence of 151 months is sufficient to comply with the purposes of that statute.

DATED at Anchorage, Alaska this 2nd day of July 2008.

Respectfully submitted,

/s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:      907-646-3400
Fax:        907-646-3480
E-Mail:     rich_curtner@fd.org

Certification:
I certify that on July 2, 2008,
a copy of the **Motion to Reduce Sentence** was served electronically on:

Audrey J. Renschen
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
E-Mail: audrey.renschen@usdoj.gov

and a copy was hand delivered to:

U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562

/s/Rich Curtner