NELSON P. COHEN
United States Attorney

AUDREY J. RENSCHEN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-5011
Email: audrey.renschen@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:99-cr-0036-02 (HRH) |
| | ) |
| Plaintiff, | ) **GOVERNMENT'S** |
| | ) ***PARTIAL* OPPOSITION TO** |
| v. | ) **DEFENDANT'S MOTIONS AT** |
| | ) **DOCKET 709, FOR REDUCTION** |
| JUAN FRANCISCO RINCON VALERA, | ) **OF SENTENCE PURSUANT TO** |
| | ) **18 U.S.C. § 3582(C)** |
| | ) |
| Defendant. | ) |

Plaintiff United States of America, through its counsel of record, Assistant United States Attorney Audrey J. Renschen, does not oppose defendant Valera's motion for 2-point offense level reduction of sentence pursuant to 18 U.S.C. § 3582(c) (docket 709). However, the United States does oppose any further reductions to his sentence.

The motion should be granted, and Valera's sentence should be lowered to a term of imprisonment of no fewer than 262 months, the bottom of the revised sentencing guidelines range. The defendant's claims for additional relief should be denied.

This partial opposition begins with the legal bases for the government's position, and ends with factually specific reasons why Valera's sentence should not be reduced below 262 months.

I. **The Legal Bases for Limiting Valera's Sentence Reduction to the Sentencing Range Consistent with Revised Offense Levels Determined by Crack Amounts.**

As shown below, the Sentencing Guidelines and 18 U.S.C. Section 3582(c)(2) both set out limited formulas for reducing a sentence as a result of a change in the Sentencing Guidelines. Furthermore, contrary to Valera's claims, there are no constitutional reasons the Court ought not follow those standards.

A. **The Process of Considering a Section 3582(c)(2) Reduction**

Although the defendant may qualify for a reduction in sentence under Section 3582(c)(2) and the applicable policy statements of the Commission, a reduction of sentence is not automatic. This Court's discretion is set forth in Section 3582(c)(2) itself, which provides: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the

extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Thus, section 1B.10 creates discretion for a district court to reduce a sentence based on a retroactive change but does not require it to do so. See United States v. Wales, 977 F.2d 1323, 1327-28 (9th Cir. 1992) (section 1B1.10 "merely affords the sentencing court discretion" to make reduction but "does not mandate" it) (quotation omitted); see also, e.g., United States v. Vautier, 144 F.3d 756, 760 (11th Cir. 1998) ("[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary"); United States v. Ursery, 109 F.3d 1129, 1137 (6th Cir. 1997); United States v. Whitebird, 55 F.3d 1007, 1010 (5th Cir. 1995); United States v. Mueller, 27 F.3d 494, 497 n.5 (10th Cir. 1994) United States v. Coohey, 11 F.3d 97, 101 (8th Cir. 1993).

Accordingly, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted. Id. comment. (n.1(B)(I)); see also USSG § 1B1.10 comment. (backg'd) ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of

right.").

"Thus, reading § 3582(c)(2) and the Sentencing Guidelines together, the district court must make two distinct determinations before deciding whether to reduce a defendant's sentence under § 3582(c)(2)." Vautier, 144 F.3d at 760. First, Section 1B1.10(b) directs the court to consider the new guideline range:

> In determining whether, and to what extent, a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced . . . .

In other words, "the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. In undertaking this first step, only the amended guideline range is changed. All other guideline application decisions made during the original sentencing remain intact." Vautier, 144 F.3d at 760. Then, in the second step, "in light of the conclusion reached in the first step, the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." Id.[1]

---

[1] The Eighth Circuit has also endorsed and explained at length this two-step procedure. United States v. Hasan, 245 F.3d 682, 684-85 (8th Cir. 2001) (en banc).

In United States v. Legree, 205 F.3d 724, 728 (4th Cir. 2000), the court stated that it disagreed with the need for or utility of the two-step method. However, the essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2)

Subject to the limits set forth in Section 1B1.10(b), to be discussed below, the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

## B. The Permissible Extent of the Section 3582(c)(2) Reduction

If this Court decides to reduce the sentence, the extent of the reduction is strictly limited. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. See 18 U.S.C. § 3582(c)(2);

---

reduction of sentence, including consideration of the Section 3553(a) factors, may be presumed from the record. The court did not criticize the underlying proposition that a trial court in fact should consider the guideline range as affected only by the guideline amendment, and should then apply the Section 3553(a) factors in determining whether to reduce the sentence.

28 U.S.C. § 994(u). The Commission, in turn, directed in Section 1B1.10(b) that, with one exception (where the defendant earlier received a below-guideline sentence, which was not the case here), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." USSG § 1B1.10(b)(2)(A). An application note adds: "Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)." USSG § 1B1.10 comment. (n.3).[2] Thus, the Court may not reduce the sentence below the range provided by the amended

---

[2] Application note 3 provides an example of this rule: "For example, in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 41 to 51 months; (2) the original term of imprisonment imposed was 41 months; and (3) the amended guideline range determined under subsection (b)(1) is 30 to 37 months, the court shall not reduce the defendant's term of imprisonment to a term less than 30 months."

guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." USSG § 1B1.10 comment n.3.[3]

### C. Booker Does Not Require a De Novo Resentencing

Defendant contends that, rather than considering where within the revised guideline range he should be sentenced, this Court should treat the revised range as entirely advisory, consistent with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). The government submits that this Court should exercise its discretion to decline to reduce the sentence below the amended guideline range.

Defendant's position, although not specified in his brief, implicitly rests on United States v. Hicks, 472 F.3d 1167 (9th Cir. 2007), which held that, when applying a retroactive guideline amendment in a Section 3582(c)(2) proceeding, the newly calculated range must be treated as advisory and not mandatory. Hicks answered two questions: (1) "whether § 3582(c)(2) proceedings fall within the

---

[3] Application note 4(B) states that if the prohibition in subsection (b)(2)(C) to a sentence below the time already served precludes a reduction in the term of imprisonment that the court determines otherwise would have been appropriate as a result of the amended guideline range determined under subsection (b)(1), the court may consider any such reduction in connection with any motion for early termination of a term of supervised release under 18 U.S.C. § 3583(e)(1). That issue is not ripe, however, with regard to a current prisoner. A court may not reduce a term of supervised release under a motion pursuant to Section 3582(c)(2). The matter must await a motion under Section 3583(e)(1) filed "at any time after the expiration of one year of supervised release," addressing "the conduct of the defendant released." 18 U.S.C. § 3583(e)(1).

7

scope of <u>Booker</u>'s ambit," and (2) "whether policy statements by the Sentencing Commission nonetheless preclude the application of <u>Booker</u> to § 3582(c)(2)." <u>Hicks</u>, 472 F.3d at 1169. The court held that "<u>Booker</u> abolished the mandatory application of the Sentencing Guidelines in all contexts," that treating the recalculated guideline range in a Section 3582(c)(2) proceeding as advisory "is not inconsistent with any applicable policy statement," and that "to the extent that the policy statements are inconsistent with <u>Booker</u> by requiring that the Guidelines be treated as mandatory, the policy statements must give way." <u>Hicks</u>, 472 F.3d at 1169, 1173.

The government disagrees with the decision in <u>Hicks</u> and reserves the right to challenge its holding on appeal in this case.[4] Nevertheless, because the government recognizes that this Court is bound to follow the guidance from <u>Hicks</u>,

---

[4] <u>Hicks</u> arguably can be distinguished as dicta because it did not deal with the current version of Section 1B.10. At the time of <u>Hicks</u>, the Guidelines were "silent on the manner in which the modified ranges should be used." 472 F.3d at 1173. Now, as discussed in the text, the revised Section 1B1.10(b)(2)(A) clearly limits any reduction to the floor of the revised guideline range (or proportionally lower than the revised range, if defendant originally received a below-guideline sentence.) The Commission also has made clear that Section 3582(c)(2) proceedings "do not constitute a full resentencing of the defendant." USSG § 1B1.10(a)(3). These determinations have force because Section 3582(c)(2) limits sentencing reductions based on retroactive guidelines to those authorized by the Sentencing Commission, see 28 U.S.C. § 994(u). Further, as a constitutional matter, <u>Hicks</u> erroneously applied <u>Booker</u> to the Section 3582(c) context. <u>Booker</u> was an application of the rule in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), which was concerned with facts that increase the penalty for a crime above the jury-authorized statutory maximum. <u>Booker</u> has no application to the discretionary relief under Section 3582(c)(2), which can only decrease -- not increase -- a defendant's sentence.

the government contends that the Court should exercise its discretion to deny a further sentencing reduction below the amended guideline range. Hicks recognizes that a defendant seeking a reduced sentence on account of a retroactive guideline amendment "is not entitled to a sentence reduction as a matter of right," but only as "a matter of discretion." Hicks, 472 F.3d at 1172. Even accepting Hicks' conclusion that the district court may view the amended guideline range as advisory, there are strong grounds for deciding, within the Court's discretion, to adhere to the Sentencing Commission's guidance regarding sentencing reductions.

In any case, even in an original sentencing proceeding, the Guidelines remain influential. See Gall v. United States, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory"); United States v. Carty, 520 F.3d 984, 991 (9th Circuit, 2008). ("All sentencing proceedings are to begin by determining the applicable Guidelines range. The range must be calculated correctly. In this sense, the Guidelines are the 'starting point and the initial benchmark,' and are to be kept in mind throughout the process (citations omitted)). Likewise, the court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

These considerations are even more compelling in the context of a sentencing reduction based on a retroactive guideline amendment. In 18 U.S.C. § 3582(c)(2), Congress created a "narrow exception to the rule that final judgments are not to be modified." United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003). Section 3582(c)(2) permits a sentencing reduction based on a retroactive guideline only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In the Sentencing Reform Act, Congress specifically delegated to the Sentencing Commission the authority to determine when, and to what extent, a sentencing reduction is allowed. Under 28 U.S.C. § 994(u), when the Commission amends the guidelines, the Commission "shall specify in what circumstances and by what amounts the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). As the Supreme Court has explained, under this provision, "Congress has granted the Commission the unusual and explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." Braxton v. United States, 500 U.S. 344, 348 (1991) (citing § 994(u); emphasis omitted). Pursuant to this authority, the Commission, employing its expertise, has authorized the retroactive application of only a handful of the hundreds of

guideline amendments adopted since 1987, and its decision is binding -- if the Commission does not recognize an amendment as retroactive, courts have no authority to rely on it to revisit a final sentence. United States v. Cueto, 9 F.3d 1438, 1441 (9th Cir. 1993).

Consistent with the authority granted in 28 U.S.C. § 994(u), the Commission recently has placed explicit limits on the extent of a sentencing reduction under Section 3582(c)(2) -- limits that were not addressed in Hicks. USSG § 1B1.10(b)(1) directs that "[i]n determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court . . . shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Section 1B1.10(b)(2) sets out specific limits on the extent of sentencing reductions, providing that, with one exception, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." USSG § 1B1.10(b)(2)(A). The sole exception is set forth in Section 1B1.10(b)(2)(B), which provides that if the defendant's "original term of imprisonment was less than the term of imprisonment

11

provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) may be appropriate."[5] USSG § 1B1.10(b)(2)(B); see id., comment. (n.3) (if defendant's original sentence represented downward departure of 20% below guideline range, reduction to term that is 20% below amended guideline range would be a "comparable reduction"). Thus, in the Commission's view, the extent of a sentencing reduction under Section 3582(c)(2) should be limited to the amended guideline range or a "comparabl[e]" reduction.[6]

These judgments of the Sentencing Commission deserve respect. It is appropriate to abide by these restrictions, given that the Commission has properly determined that Section 3582(c)(2)'s exception to the general rule of finality in criminal litigation should extend only to application of the newly amended guideline, not to relitigation of other aspects of the sentence. See USSG §

---

[5] Section 1B1.10(b)(2)(B) further provides that if the defendant's original sentence "constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and United States v. Booker, 543 U.S. 220 (2005), a further reduction generally would not be appropriate."

[6] This language in the policy statement, refined in the amendment which becomes effective March 3, 2008, casts the Court's error in Hicks in sharp relief. Even more explicitly than before, the amended policy statement makes clear that a sentence reduction is authorized, with one exception, only to the bottom of the amended guideline range. It is plain that the Sentencing Commission is exercising its power, granted in 28 U.S.C. § 994(u), to regulate the limit of a sentencing reduction, and that this statutory provision and this limitation are unaffected by the remedial opinion in Booker. It is for this reason that the government specifically reserves its right to contest the viability of Hicks, which never addressed the significance of Section 994(u).

1B1.10(a)(3) (proceedings under Section 3582(c)(2) "do not constitute a full resentencing of the defendant"). Adherence to the limits imposed by the Commission will also avoid disparity in sentencing among similarly situated defendants. See 18 U.S.C. § 3553(a)(6).

Accordingly, the government recommends that, consistent with the statutory scheme and the policy statements of the Sentencing Commission, the Court determine whether a reduction in the defendant's sentence is appropriate, and if so, that the Court reduce the sentence only within the limits imposed by the Sentencing Commission.

In this case, moreover, a further reduction is not warranted on the facts. As shown below, Valera's drug trafficking was carefully-planned, manipulatively executed during his federal supervised release for a drug trafficking crime, and flourished undeterred by his earlier federal prosecution and sentence. The facts set forth in Valera's motion do not tell the complete story, and Valera may have confused these convictions with his earlier drug trafficking crimes.

The drug amounts set forth in Valera's motion are inconsistent with those examined by the jury and the Court at sentencing. As noted below, contrary to Valera's claims, the jury, in special verdicts, found unanimously and beyond a reasonable doubt that Valera's conspiracy and distribution convictions involved

cocaine base. Docket 318.

### D. Factual Reasons Why Valera's Sentence Should Not Be Further Reduced

On November 23, 1999, a jury convicted Valera of one count of conspiracy to distribute and possess cocaine base with intent to distribute, and two counts of distribution of cocaine base.[7] (SER 1-3) Valera was indicted along with 13 other defendants in a wide-ranging drug conspiracy. (SER 84-113) The Indictment alleged a conspiracy involving approximately 1000 grams of cocaine and approximately 337 grams of cocaine base. Docket 125. Count 15 charged Valera with distributing "approximately one ounce of cocaine base," Count 17 charged him with distributing "approximately one ounce of cocaine base." Id.

The government proved the conspiracy at trial through evidence of serial controlled buys to undercover officers, that were supported by tape recordings and surveillance. (See e.g. SER 27-39) In addition, a co-conspirator testified in detail concerning the scope of the conspiracy as well as individual transactions. Her testimony was corroborated by the evidence noted above as well as wiretap recordings. (See e.g. SER 40-51)

---

[7] Undersigned counsel has used the supplemental excerpts of record (SER) citations filed in conjunction with Valera's October 2000 appeal for the factual basis provided here. The exact transcript citations could not be pinpointed because the SERs are not immediately available. However, if the Court wishes, the trial transcripts can be requested from archives, and the appropriate trial citations can be provided.

Count 15 involved a face-to-face and hand-to-hand monitored delivery of 25.2 grams of cocaine base from Valera to an undercover officer. (SER 15, 74-78) Count 17 happened two weeks later, on October 30, 1998, when the undercover officer again telephoned Valera and arranged another one ounce sale of crack cocaine. (SER 79-83) The undercover officer traveled to Fashion 2000, an Anchorage clothing business, run by co-defendant Gerson Nunez, that had been the location of many of the drug trafficking activities described throughout the trial. (SER 121, PSR Attachment A, pp. 5-9) When the undercover officer arrived, Gerson Nunez provided the undercover officer with his crack order, what amounted to 26.8 grams of crack cocaine, during another monitored and surveilled transaction. (SER 16, 82-83) Valera was not present at the delivery but had set up the deal in the recorded phone call with the undercover officer. (SER 79-83)

At trial, Valera **stipulated** to the Alaska Scientific Crime Laboratory's analysis and report of the recovered cocaine and cocaine base, **and their respective quantities.** (SER 14-18) Thus, pursuant to defendant's own stipulation, Valera's conviction on Count 15, for distribution of cocaine base, involved 25.2 grams. Valera's conviction on Count 17, for distribution of cocaine base, involved 26.8 grams. These two distributions thus amounted to more than 50

15

grams of cocaine base.[8] Neither Valera, nor his co-defendant Gerson Nunez, ever disputed the fact that the substances were cocaine and cocaine base, and neither ever disputed the amounts. (SER 23-26)

By special verdicts, the jury had to find, on the conspiracy count, whether the conspiracy involved cocaine or cocaine base, and on counts 15 and 17, the jury had to find delivery of cocaine base. (Docket 318) The jury was not instructed to find specific quantities as both defendant's had stipulated to the quantities involved in each count as reflected in the laboratory reports. Valera made no objection to the elements instructions; specifically he never requested that the jury make any quantity determinations.

At sentencing, Gerson Nunez's cocaine and cocaine base distribution amounts were also attributed to Valera as relevant conduct because they were proven foreseeable to Valera and in furtherance of the conspiracy. (PSR ADDENDUM pp. 1-2,) During the trial, evidence showed Valera was directly and heavily involved with Gerson Nunez. They worked together in supplying the undercover officer with cocaine and cocaine base. They shared a residence where they both stored their cocaine and cocaine base supplies. They packaged and

---

[8] The amounts alleged in the indictment are the amounts represented by the defendants when they sold to the undercover officer. The exact amounts determined by the Alaska Scientific Crime Laboratory were somewhat less, 25.2 grams and 26.8 grams, and did not include the weight of wrapping materials, only the drugs themselves.

distributed drugs at the apartment. Valera used Gerson Nunez's cell phone, his car, and his business, Fashion 2000, to distribute drugs to their customers. (SER 114-121) Other evidence proved Valera's close involvement with his girl friend and assistant, Mirian Nunez, Fanny Palacios Ibarra, and Edward Labere. (PSR pp.4-5, PSR Attachment A, pp. 4-22) That co-conspirator interaction proved the additional quantities were foreseeable and in furtherance of the conspiracy.

Valera did object to some of the presentence report findings concerning relevant conduct, however he never disputed the amounts in the distribution convictions. Valera never disputed the application of 21 U.S.C. § 841(b)(1)(A)(iii) requiring a twenty-year mandatory minimum, and the concomitant maximum penalty of life imprisonment based on the jury's findings on Counts 15 and 17 and his stipulation that the drugs involved amounted to a total of over 50 grams of cocaine base. (SER 52-70) Valera disputed only the relevant conduct amounts attributed to him as part and parcel of the conspiracy. (SER 52-70)

The court adopted the presentence report's findings attributing the equivalent of just over 67 kilograms of cocaine powder to Valera. (PSR p. 5, SER 12) Valera's role in the offense was clearly documented during trial, and the presentence report writer summarized that evidence though out the presentence

report.[9] Because he was on supervised release for another separate, cocaine distribution conviction at the time of these offenses, Valera was subject to a twenty year mandatory minimum sentence on the conspiracy, because it involved over 50 grams of cocaine base. (PSR p. 8) The United States filed a 21 U.S.C. § 851 notice before trial, (Docket 291). Contrary to Valera's claims of sentencing errors, the record shows that the Honorable James F. Fitzgerald gave appropriate consideration to the trial evidence he heard. As noted, he thoughtfully sentenced Valera under 21 U.S.C. § 841(b)(1)(A)(iii), to the appropriate sentencing range, and ordered the low end of that range, 324 months in prison. (Docket 375)

Valera has already had a full opportunity to air his Apprendi and other

---

[9] "As stated in paragraph 34 of Attachment A, Gerson Nunez tells an APD informant that the cocaine the informant is purchasing is Valera's no matter who sells it to him. In paragraph 72 of Attachment A, Palacios testified that Valera was giving his cocaine to Mirian Nunez to keep at the 42nd Street apartment and that all the money from the cocaine sales was being kept there also. As stated in paragraph 74 of Attachment A, Palacios testified that Valera would not touch the cocaine but Valera did direct Mirian Nunez on how to weigh the cocaine and how to package the cocaine for distribution. As stated in paragraph 75 of Attachment A, Palacios testified that she would arrange with Valera to obtain cocaine, and once Valera had the cocaine he would contact Palacios to pick up the cocaine. Valera told Palacios that if he could not be there for the delivery then he would leave the cocaine with Mirian Nunez. As stated in paragraph 83 of Attachment A, on November 28, 1998, Valera called Gerson Nunez at the residence and told Gerson Nunez that Valera was sending someone to the residence to purchase 3.5 grams of cocaine. Valera then instructed Gerson Nunez to retrieve a white bag outside the bathroom window, told Gerson Nunez that there was a packet of cocaine in the white bag with 5.5 grams of cocaine in it, and instructed Gerson Nunez to take 3.5 grams from the 5.5-gram bag of cocaine and get the cocaine ready for this person to pick up. Valera then instructed Gerson Nunez on the sale price. Based upon the aforementioned, Valera is viewed as a manager/supervisor of Gerson Nunez and Mirian Nunez and the criminal activity involved more than five participants; therefore, three levels are added." Presentence Report pp. 4-5, ¶ 22.

alleged sentencing errors on appeal, and no constitutional violations were found. See, <u>United States v. Valera</u>, 17 Fed.Appx. 612, 2001 WL 985708 (C.A.9 (Alaska)). The arguments he is making now, have already been disposed of in other forums, and this court is not authorized under to look at them anew under 18 U.S.C. Section 3582(c)(2).

Amendment 715 to the Sentencing Guidelines is not an invitation to repeat earlier unsuccessful claims to have one's sentence reduced. As documented above, 18 U.S.C. Section 3582(c)(2) limits the scope of redress to the context of the Sentencing Guidelines Amendment.

Finally, Valera's request for a 151 month sentence exemplifies that he is going for broke to get the lowest sentence he can, without regard for the law. Consistent with his earlier requests, Valera does not have a supportive legal basis to support his request for 151 months. This Court has no authority to completely ignore the statutory minimum sentence of 20 years required under 21 U.S.C. § 841(b)(1)(A)(iii) and 21 U.S.C. § 851.

III.  **Conclusion**

The United States does not contest the fact that Valera is entitled to a 2 level reduction in his offense level under 18 U.S.C. Section 3582(c)(2), and a sentencing range of 262-327 months. The motion should be granted, and Valera's sentence should be lowered to a term of imprisonment of no fewer than 262 months, the

19

bottom of that range.

      RESPECTFULLY SUBMITTED this 28th day of August, 2008, at

Anchorage, Alaska.

                                NELSON. P. COHEN
                                United States Attorney

                                s/Audrey J. Renschen
                                AUDREY J. RENSCHEN
                                Assistant U.S. Attorney
                                Federal Building & U.S. Courthouse
                                222 West Seventh Avenue, #9, Room 253
                                Anchorage, Alaska  99513-7567
                                Phone: (907) 271-5071
                                Fax: (907) 271-5011
                                Email: audrey.renschen@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August 28, 2008
a copy of the foregoing was served
electronically on Rich Curtner.

s/ Audrey Renschen